# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMAL DAMON HENDRIX,

    Plaintiff

v.

JOSHUA BARFIELD, et. al.,

    Defendants

Case No.: 3:18-cv-00393-RCJ-WGC

**Order**

Re: ECF No. 33

Plaintiff has filed a motion requesting the court to screen his First Amended Complaint. (ECF No. 33.)

## I. BACKGROUND

Plaintiff filed his original complaint, which the court screened on October 16, 2019. (ECF No. 4.) Plaintiff was allowed to proceed with a First Amendment retaliation claim in Count I against defendants J. Rivera (erroneously named as Riveria), J. Mason, V. Belt, D. Frazier, A. Montes, S. Mollett, and John Doe 1 based on allegations that they participated in conducting an unnecessary cell search in retaliation for Plaintiff's filing of grievances and civil litigation. During the search, they destroyed his legal documents and religious books and materials. Plaintiff was also required to strip and show his body cavity, and the search was unnecessary and done for the purpose of intimidating and humiliating Plaintiff. Plaintiff had alleged that he filed grievances, which were reviewed by Wickham and Filson, but they did not act on the grievances. The court found that Plaintiff failed to state a colorable claim against Wickham and Filson because he alleged that they knew about the grievances *after* the search was completed, but there

was no allegation that they knew about the December 10, 2017 search and acquiesced to that search; therefore, Wickham and Filson were dismissed from Count I without prejudice. (ECF No. 4 at 3-5.)

The court also found that Plaintiff failed to state a colorable Eighth Amendment conditions of confinement claim in Count I, based on allegations that he was kept in the shower area in restraints for six hours without a bathroom break as he had not alleged that he ever asked to use the bathroom and was denied permission. In addition, the court stated that having to kneel on a wet shower floor, without more, is insufficient to state a colorable conditions of confinement claim. Therefore, these claims were dismissed without prejudice. (*Id.* at 6.)

Finally, the court dismissed Plaintiff's Fourteenth Amendment deprivation of property claim without prejudice. (*Id*. at 7.)

In addition, he was allowed to proceed with a retaliation claim in Count II against defendants Esquivel, Adams, Ornelas, Herrera, Filson and Wickham based on allegations that they conducted an unnecessary search of Plaintiff's cell in retaliation for his filing of grievances and civil rights litigation. During the search they threw away or destroyed Plaintiff's personal property. Plaintiff was also allowed to proceed against Filson and Wickham based on allegations that they were aware prison guards were conducting unnecessary retaliatory search of Plaintiff's cell based on his previous grievances, but did not act to prevent the retaliatory searches and continued to assign guards who had retaliated against Plaintiff to his unit. (*Id.* at 8.)

The court noted that none of the allegations implicated the Eighth Amendment, and as such, the Eighth Amendment claim was dismissed without prejudice. (*Id*. at 7-8.) In addition, the Fourteenth Amendment deprivation of property claim was dismissed without prejudice. (*Id.*)

Finally, Plaintiff was allowed to proceed with a retaliation claim against defendants Ivie and Barfield in Count 3 based on allegations that they tampered with Plaintiff's meal in retaliation for his filing of a grievance, and as a result he had nothing to eat for dinner and went to bed hungry. (*Id.* at 9.)

The court noted that the allegations did not implicate the Fourteenth Amendment; therefore, that claim was dismissed without prejudice. (*Id.*) The court also found that Plaintiff failed to state a colorable free exercise of religion claim because Plaintiff did not allege that Defendants brought him a non-kosher meal in place of his regular meal. Instead, he alleged they brought him no edible food at all. The court concluded that the alleged failure to bring Plaintiff his dinner on a single occasion did not place a substantial burden on his practice of only eating kosher meals. Therefore, that claim was dismissed without prejudice. (*Id.* at 9-10.)

Defendants Drummond and Reubart were dismissed without prejudice because the complaint did not contain any allegations against them. (*Id.* at 10.)

Therefore, the defendants proceeding in the original complaint were: Adams, Barfield, V. Belt, Esquivel, Filson, D. Frazier, Herrera, Ivie, J. Mason, S. Mollett, A. Montes, Ornelas, J. Rivera, Wickham, and John Doe 1 (when Plaintiff learns his identity).

Plaintiff subsequently filed a motion for leave to amend, and a motion to exclude his case from mediation. (ECF Nos. 6, 7.) The latter motion was denied and the parties were unsuccessful in settling the case. (ECF No2. 9, 13.) The court then issued an order granting Plaintiff's application to proceed in forma pauperis, requiring him to pay the $350 filing fee over time, and granted his motion for leave to file an amended complaint within 30 days. (ECF No. 15.)

Service of the original complaint was accepted by the Attorney General's Office on behalf of Michael Adams, Vince Belt, Daniel Esquivel, Alfredo Montes, Jesus Rivera

(erroneously named as J. Riveria), and Harold Wickham. Service was not accepted for former employees Joshua Barfield, Timothy Filson, Desean Frazier, Terri Herrera, Hawk Ivie, and Joseph Mason, but their last known addresses were filed under seal. Service was also not accepted for Javier Ornelas and Stephen Mollett as counsel was confirming the status of requests for representation of those individuals and would file an amended acceptance of service, if necessary. (ECF Nos. 16, 17.) The court issued summonses for Barfield, Filson, Frazier, Herrera, Ivie and Mason. (ECF No. 20.)

Plaintiff filed his first amended complaint (FAC) on January 8, 2020. (ECF No. 21.)

The service return for Ivie was filed indicating service on February 10, 2020. (ECF No. 24.)

Defendants Adams, Belt, Esquivel, Montes, Ornelas, Rivera and Wickham filed an answer to the FAC on February 11, 2020. Curiously, the answer states that various of the defendants named in the FAC are not currently parties to the litigation even though they are named in the FAC and there has been no order dismissing them from the case (Mason, Barfield, Frazier, Ivie, Mollett, Filson, Beedle, McArdle, Drummond, Baltierra, Mele, Reubart, and John Doe 1). (ECF No. 25.)

Following the filing of the answer, as it standard protocol, the court issued a scheduling order. (ECF No. 26.)

Defense counsel never filed anything further regarding acceptance or non-acceptance of service for Javier Ornelas and Stephen Mollett. The service returns from the U.S. Marshals for service of the original complaint were subsequently returned as unexecuted for Filson, Frazier, and Mason. (ECF Nos. 30, 31, 32.)

On February 27, 2020, Plaintiff filed a motion requesting that the court screen the FAC, and re-set the discovery schedule. (ECF No. 33.) Plaintiff's motion is granted, and the court will screen the FAC below. Defendants' answer to the FAC will be stricken as it was filed pre-screening of the FAC. While the court would typically exercise its discretion and not screen an amended complaint where the defendants had already filed an answer, the court will screen the FAC here because the answer seemingly ignores the fact that the FAC includes additional defendants and service on those new defendants has not been addressed. Moreover, the court will review the sufficiency of the claims asserted in the FAC so as to avoid future confusion as to which claims are proceeding and against whom.

## II. SCREENING

The FAC names defendants: M. Adams, Joshua Barfield, K. Baltierra, Beedle, V. Belt, David Drummond, Daniel Esquivel, D. Timothy Filson, Frazier, H. Ivie, J. Mason, Michael McArdle, M. Mele, S. Mollett, A. Montes, J. Ornelas, William Reubart, J. Riveria, Harold Wickham, and John Doe 1.

**1. Claim 1**

In Claim 1, Plaintiff alleges that on December 10, 2017, while housed in Ely State Prison's (ESP) segregation unit, defendants Rivera, Mason, Belt, Frazier, Montes, Mollett and Beedle retaliated against him for filing lawsuits and grievances when they purposefully pulled Plaintiff out of his cell and performed a search of his cell while Plaintiff was placed in the housing unit shower cage in full restraints for six hours without bathroom breaks. Plaintiff avers that the officers destroyed Plaintiff's legal documents, religious books and materials on the advice of their supervising officer Montes. (ECF No. 21 at 11-12.)

Officers Mollett and Beedle asked Plaintiff to strip for a body cavity search in a shower cage that had body fluids on the floor from previous prisoners who bathe, and Plaintiff had to kneel there and show his body cavity. He alleges this was purposefully done to harass, humiliate, intimidate and embarrass Plaintiff. (*Id.* at 12.)

Plaintiff avers that Rivera came to the shower cage and told Plaintiff the cell search was performed because of Plaintiff's lawsuits and grievances. Plaintiff asked Mason, Belt, Frazier and Montes to stop the search, but they failed to intervene for three hours. (*Id.* at 12.)

Plaintiff goes on to allege that Wickham, the warden, and Filson, the deputy director, knew of retaliation against Plaintiff by ESP staff for filing grievances and lawsuits from Plaintiff's past grievances, but as grievance responders they elected not to correct their subordinates' actions, but instead condoned their behavior. (*Id.* at 12-13.)

Plaintiff references the First, Eighth and Fourteenth Amendments.

**1. First Amendment Retaliation**

The retaliation standard can be found in the court's original screening order. Plaintiff states a colorable retaliation claim against defendants Belt, Filson, Frazier, Mason, Mollett, Montes, Rivera (erroneously named as Riveria) and Wickham.

**2. Eighth and Fourth Amendments**

There appear to be two potential components to Plaintiff's claims under the Eighth Amendment: (1) the body cavity search in the shower cage by Mollett and Beedle that Plaintiff asserts was done with the purpose to harass, humiliate, intimidate and embarrass; and (2) forcing Plaintiff to kneel in "body fluids" on the floor of the shower and then stand in the shower for six hours without bathroom breaks.

Insofar as Plaintiff alleges that his constitutional rights were violated by the strip search itself, the applicable amendment is the Fourth Amendment's right to be free from "unreasonable searches and seizures." U.S. Const., amend IV." Prisoners retain a limited Fourth Amendment right to shield themselves from being observed nude. *Michenfelder v. Sumner*, 860 F.2d 328, 333-34 (9th Cir. 1988). The Supreme Court held in *Bell v. Wolfish,* 441 U.S. 520, 528 (1979) that routine visual body cavity searches performed to prevent the possession of weapons and contraband do not violate a prisoner's Fourth Amendment rights. The Ninth Circuit subsequently held that in general, strip searches do not violate the Fourth Amendment rights of prisoners, unless they are "excessive, vindictive, harassing, or unrelated to any legitimate penological purpose." *Michenfelder,* 860 F.2d at 332-33.

Construing Plaintiff's pro se claim that Mollett and Beedle conducted the strip search in order to harass, humiliate, intimidate and embarrass Plaintiff liberally, Plaintiff may proceed with his Fourth Amendment claim against Mollett and Beedle.

As to any claim that Plaintiff's Eighth Amendment conditions of confinement rights were violated when he was allegedly forced to kneel in the shower to show his body cavity during the strip search and then was standing in the shower cage for six hours without bathroom breaks, Plaintiff still fails to state a claim. He includes no further allegations than were included in the original complaint. Therefore, the conditions of confinement claim remains dismissed.

**3. Fourteenth Amendment**

As was the case with the original complaint, Plaintiff's allegations regarding the destruction of property do not implicate the Fourteenth Amendment; therefore, the Fourteenth Amendment claim will remain dismissed.

## 2. Claim 2

In Claim 2, Plaintiff alleges that on March 11, 2018, D. Esquivel, Adamas, Ornelas, and T. Herrera retaliated against him for filing a verbal complaint to the facility area sergeant. Plaintiff told the sergeant that Esquivel, Adamas, Ornelas, and Herrera were not doing their job with handing out supplies to inmates. When the sergeant left the housing unit, Herrera, Adamas, Ornelas, and Esquivel purposefully performed a cell search, destroying Plaintiff's personal property and legal documents. Esquivel, Herrera and M. Adams placed Plaintiff in the unit shower cage to conduct the unconstitutional search of his cell. He was placed into the shower cage in full restraints and was left that way while they searched and trashed Plaintiff's cell. Onrelas jointed the search, throwing away Plaintiff's pens, copy paper, envelopes and personal property and destroyed personal appliances and he did not get relief after filing a small claims complaint in justice court. M. Adams worked in the control tower and refused to notify the area sergeant.

Filson, the warden, and Wickham, the deputy director, were grievance responders regarding a prior unlawful search by Esquivel, and continued to assign Esquivel to Plaintiff's unit.

Like the original complaint, Plaintiff may proceed with a retaliation claim against defendants D. Esquivel, Adamas, Ornelas, and T. Herrera, Filson and Wickham.

Plaintiff also references the Eighth and Fourteenth Amendments. None of the allegations give rise to an Eighth Amendment claim. With respect to the Fourteenth Amendment, as with the original complaint, Plaintiff does not state a claim. Where a prisoner alleges a deprivation of a property interest caused by the unauthorized negligent or intentional action of a prison official, he does not state a constitutional claim where the state provides an adequate post-deprivation

remedy. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Zinermon v. Burch*, 494 U.S. 113, 129-132 (1990). This is because "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*, 468 U.S. at 533. Nevada provides a meaningful post-deprivation remedy for the loss of personal property. *See* Nev. Rev. Stat. § 41.041, §41.0322. While Plaintiff alleges that he ultimately did not get any relief after filing a small claims case in justice court, this does not mean that the state did not provide an adequate process to obtain post-deprivation remedy. *See Hudson*, 468 U.S. at 535 ("[T]hat [the plaintiff] might not be able to recover under these remedies the full amount which he might receive in a §1983 action is not, as we have said, determinative of the adequacy of the state remedies."). Therefore, Plaintiff's Fourteenth Amendment due process claim in Claim 2 remains dismissed.

**3. Claim 3**

Plaintiff alleges that on March 19, 2018, H. Ivie and J. Barfield purposefully refused to provide Plaintiff with his Islamic religious food kosher tray in retaliation for filing a grievance against their subordinate, Esquivel. Instead, they gave Plaintiff a food tray filled with empty wrappers and bitten of food. Plaintiff is a Muslim who was prescribed a kosher food religious diet to accommodate his religious beliefs. He avers that Ivie and Barfield denied him his right to practice his religious beliefs in retaliation for filing previous grievances against Esquivel. He references the First and Fourteenth Amendments.

Plaintiff may proceed with his retaliation claim in Claim 3 against Ivie and Barfield.

Plaintiff's allegations do not implicate the Fourteenth Amendment.

Moreover, Plaintiff still does not state a First Amendment free exercise of religion claim in the FAC. Plaintiff alleges that Ivie and Barfield denied him his kosher meal on a single occasion. The Ninth Circuit and many district courts within it have held that an isolated or sporadic interference does not substantially burden the free exercise of religion. *See Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (a "relatively short-term and sporadic" interference did not constitute a substantial burden"); *Thomas v. Cox,* No. 3:13-cv-00508-RCJ-CBC, 2019 WL 2509023, at *7 (D. Nev. May 3, 2019), *report and recommendation adopted by* 2019 WL 2517788 (D. Nev. Jun. 17, 2019) (receiving a single improper kosher meal during Passover did not constitute a substantial burden on his right to free exercise of religion); *Torres Arboleda v. O'Banion,* No. 2:17-cv-0442-EFB P, 2019 WL 1206826 (E.D. Cal. Mar. 14, 2019) ("Courts in the Ninth Circuit (and elsewhere) have routinely held that the denial of a religious practice on a single, isolated occasion does not constitute a 'substantial burden' and thus does not violate the First Amendment."); *Pouncil v. Sherman*, No. 1:17-cv-00547-AWI-BAM (PC), 2018 WL 646105, at *3 (E.D. Cal. Jan. 31, 2018) (allegation that inmate was denied meals on one night of Ramadan did not state a free exercise claim); *Murie v. Crossroads Corr. Ctr.*, No. CV 17-00005-GF-BMM-JTJ, 2017 WL 2265145, at *3 (D. Mont. Feb. 24, 2017) (free exercise claim dismissed on screening because allegation that inmate was not allowed to attend a sweat lodge on a single occasion did not present a substantial burden); *Stidhem v. Schwartz*, 2:15-cv-00379-TC, 2017 WL 6887139, at *3 (D.Or. Oct. 23, 2017), *report and recommendation adopted by* 2018 WL 358496 (D.Or. Jan. 10, 2018) (summary judgment granted on plaintiff's free exercise claim because a less than one-day suspension of plaintiff's kosher diet did not amount to a substantial burden); *Smith v. Cruzen,* No. 14-CV-04791 LHK (PR), 2017 WL 4865565, at *4-5 (N.D. Cal. Oct. 26, 2017), *aff'd by* 735 Fed.Appx. 434 (9th Cir. 2018) (affirming grant of

10

summary judgment because no dispute of material fact that one-time prohibition on engaging in evening congregational prayer was not a substantial burden on plaintiff's free exercise of religion); *Chapparo v. Ducart*, No. 14-CV-4955 LHK (PR), 2016 WL 491635, at *5 (N.D. Cal. Feb. 9, 2016), *aff'd* by 695 Fed.Appx. 254 (9th Cir. Aug. 14, 2017) (affirmed grant of summary judgment because four missed chapel services did not amount to a substantial burden on plaintiff's right of free exercise of religion); *Hampton v. Ayers*, No. CV 07-8130-RSWL (MAN), 2011 WL 2565358, at *15 (C.D. Cal. June 2, 2011), *report and recommendation adopted by* 2011 WL 2563246 (C.D. Cal. June 28, 2011) (summary judgment granted because single incident of interrupting a religious service was not a substantial burden on plaintiff's religious exercise); *Howard v. Skolnik*, 372 Fed.Appx.781, 782 (9th Cir. 2010) (finding no genuine issue as to substantial burden on free exercise where claim involved two alleged incidents where prison personnel interfered with inmate's fasting); *Glover v. Evans*, No. C 07-2731 JSW (PR), 2007 WL 3022249, at *2 (N.D. Cal. Oct. 15, 2007) (religious exercise claim dismissed on screening because allegation of not being provided with religion-appropriate meal on a single occasion did not state a constitutional violation); *see also Rapier v. Harris*, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (unavailability of non-pork tray for 3 meals out of 810 meals did not substantially burden inmate's exercise of religion); *Hankins v. N.Y. State Dep't of Corr. Servs.*, No. 0:07-CV-0408 (FJS/GHL), 2008 WL 2019655, at *5 (N.D.N.Y. Mar. 10, 2008) ("Courts from the Second Circuit have repeatedly found that an allegation that prison officials caused a prisoner to miss one religious service fails to state an actionable claim under the First Amendment."). Therefore, the First Amendment free exercise claim remains dismissed.

**4. Claim 4**

Plaintiff alleges that on July 26, 2019, he was escorted to ESP's visiting holding cell for a telephonic conference call with a Deputy Attorney General regarding an early case conference when Baltierra, Mele, M. McArdle and John Doe 1 retaliated against Plaintiff for filing/serving a state civil rights lawsuit. He avers that Baltierra had the escorting officers place him in a small visiting booth in total darkness and refused to turn on the lights so Plaintiff could take notes and review documents. He was there from 12:30 p.m. until 5:00 p.m. Defendant Mele stood by and allowed this to occur. Plaintiff goes on to allege that Baltierra and McArdle denied Plaintiff bathroom breaks and water while other inmates with outside visitors were allowed to use the bathroom and have water. Plaintiff claims that Baltierra told Plaintiff he should not have filed a lawsuit and she and others were going to make his life "hell at ESP." Plaintiff also contends he was not allowed to perform his daily prayers during this time period because there was no room in the visiting booth to do so. Nor was he permitted to wash for prayer or consume his religious meal for lunch.

Plaintiff alleges that John Doe 1 entered the control bubble and refused to send Plaintiff back to his housing unit.

Plaintiff contends that Drummond and Reubart (the associate wardens) were told about the wrongdoing of McArdle and Baltierra in the past via grievances and request forms before this incident, and how Plaintiff was purposely being left in the visiting holding cell/booths for extended periods of time, but no corrective action was ever taken.

Plaintiff may proceed with a retaliation claim against Baltierra, Mele, M. McArdle, and construing the allegations liberally, he may also proceed against Drummond and Reubart. Plaintiff only alleges that John Doe 1 entered the control bubble and refused to send Plaintiff

12

back to his unit, but includes no allegations giving rise to a retaliation claim against John Doe 1; therefore, John Doe 1 is dismissed without prejudice.

Plaintiff also references the First, Eighth and Fourteenth Amendments.

Plaintiff includes no allegations giving rise to a Fourteenth Amendment claim.

Insofar as Plaintiff alleges that while he was in the room he could not perform his daily prayers due to lack of space or consume his religious meal, as the court pointed out above, a relatively short-term or sporadic interference does not substantially burden the free exercise of religion. This claim will be dismissed without prejudice in the event there are facts Plaintiff can allege to cure the noted deficiency.

Plaintiff alleges that Baltierra and McArdle denied him access to water and restrooms while he was in the holding cell. Like his claim in Count I of the original complaint, Plaintiff does not allege that he asked for water or to use the restroom during this time period. In any event, the alleged deprivation of water and bathroom breaks by defendants Baltierra and McArdle for four and a half hours does not rise to the level of an Eighth Amendment violation. Courts have held that allegations involving a temporary delay in allowing a prisoner to use a restroom or have access to water fall short of establishing a constitutional violation. *See Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) ("toilets can be unavailable for some period of time without violating the Eighth Amendment"); *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (denial of water and bathroom for two eight-hour periods on two days not cruel and unusual punishment); *Harley v. Quindiahjen*, No. 19cv1607-MMA (LL), 2019 WL 5578232, at *4-5 (S.D. Cal. Oct. 29, 2019) (denial of access to water and a functioning toilet for less than a day was insufficient to state an Eighth Amendment claim); *Salinas v. County of Kern*, 1:18-cv-00235-BAM (PC), 2018 WL 5879703, at *4 (E.D. Cal. Nov. 2018) (denial of access to a

13

restroom and water for approximately nine hours on a single day is insufficient to state an Eighth Amendment claim); *Saenz v. Reeves*, No. 1:09-cv-00557 BAM PC, 2012 WL 4049975, at *14 (E.D. Cal. Sept. 13, 2012) (denying prisoner access to toilet and water for five and one half hours on one occasion and four and one half hours on a separate occasion, while in a holding cell, were not sufficient to rise to the level of sufficiently serious deprivation to violate the Eighth Amendment); *Gunn v. Tilton*, No. CV 08-1039-PHX-SRB, 2011 WL 1121949, at *4 (E.D. Cal. Mar. 23, 2011) (denial of access to water for six hours and restroom for three to four hours did not violate Eighth Amendment). Therefore, the Eighth Amendment claim will be dismissed. At this time, the dismissal will be without prejudice in the event there are additional facts upon which Plaintiff might be able to state a claim.

**III. CONCLUSION**

(1) Plaintiff's motion (ECF No. 33) is **GRANTED**. Plaintiff may proceed with the following claims in the FAC:

(a) A retaliation claim in Claim 1 against: Belt, Filson, Frazier, Mason, Mollett, Montes, Rivera and Wickham;

(b) A Fourth Amendment claim in claim 1 against Mollett and Beedle regarding the alleged strip search;

(c) A retaliation claim in Claim 2 against D. Esquivel, Adamas, Ornelas, and T. Herrera, Filson and Wickham;

(d) A retaliation claim in Claim 4 against Baltierra, Mele, McArdle, Drummond and Reubart in Claim 4.

(2) Defendants' answer to the FAC is **STRICKEN**.

(3) Within **21 days** of the date of this Order, the Attorney General's Office shall file a notice advising the court and Plaintiff: (a) whether it can accept service for: Adams, Baltierra, Beedle, Belt, Drummond, Filson, Esquivel, Frazier, Herrera, Mason, McArdle, Mele, Mollett, Montes, Ornelas, Reubart, Rivera, and Wickham; and (b) if it cannot accept service for any of those defendants, the names of the defendants for whom it does not accept service. As to any of the named defendants for whom the Attorney General's Office cannot accept service, the Office shall file, under seal, but shall not serve the inmate Plaintiff with the last known address(es) of those defendant(s) for whom it has such information. If the last known address of the defendant is a post office box, the Attorney General's Office shall attempt to obtain and provide the last known physical address(es).

(4) If service cannot be accepted for any of the named defendants, Plaintiff shall file a motion identifying the unserved defendant(s), requesting issuance of a summons, and specifying the full name and address of the defendants (if a last known address is not filed under seal).

(5) For those defendants for whom the Attorney General's Office accepts service, such defendants shall file and serve an answer or other response to the FAC within **60 days** of the date of this Order.

(6) The current scheduling order deadlines are **VACATED**. The court will issue a new scheduling order after service of the FAC is effectuated and an answer or other responsive pleading is filed.

**IT IS SO ORDERED**.

Dated: March 4, 2020

_William G. Cobb_
William G. Cobb
United States Magistrate Judge