# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JAMAL DAMON HENDRIX,

    Plaintiff

v.

JOSHUA BARFIELD, et. al.,

    Defendants

Case No.: 3:18-cv-00393-RCJ-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 61

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 61, 61-1 to 61-16.) Plaintiff filed a response. (ECF No. 65.) Defendants filed a reply. (ECF No. 66.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (First Amended Complaint (FAC), ECF No. 21.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) The court screened the FAC and allowed Plaintiff to proceed with several retaliation claims as well as an unreasonable visual body cavity search claim under the Fourth Amendment. The FAC was allowed to proceed against the following defendants: Michael Adams, Karen Baltierra, Joshua Barfield, Frank Beedle, Vince Belt, David Drummond, Daniel

Esquivel, Timothy Filson, Frazier, Herrera, Hawk Ivie, Mason, Michael McArdle, James Mele, Stephen Mollett, Alfredo Montes, Javier Ornelas, William Reubart, Jesus Rivera (erroneously named by Plaintiff as Riveria), and Harold Wickham. (ECF No. 35.) Defendants Frazier, Herrera, and Mason were dismissed for failure to timely serve them under Federal Rule of Civil Procedure 4(m). (ECF No. 55.) The Attorney General's Office accepted service for defendants Adams, Baltierra, Beedle, Belt, Drummond, Esquivel, Filson, McArdle, Mele, Mollett, Montes, Ornelas, Reubart, Rivera, and Wickham.

The court stated that Plaintiff could proceed with his retaliation claim in Claim 3 against Ivie and Barfield. (ECF No. 35 at 9:21.) The court's conclusion section in the order screening the FAC mistakenly omitted the retaliation claim in Claim 3 against Ivie and Barfield, and as a result the court erroneously failed to include these two defendants in the directive for the Attorney General's Office to indicate for whom it would be accepting service. (*See* ECF No. 35 at 14:12-21, 15:1-10.) Defendants' motion for summary judgment nevertheless acknowledges that Plaintiff was allowed to proceed with the retaliation claim against Ivie and Barfield in Claim 3. (*See* ECF No. 61 at 4:1-4.) Even though the Attorney General's Office is not representing Ivie and Barfield, Defendants' motion asserts an argument that Plaintiff failed to exhaust his administrative remedies as to Claim 3. As will be discussed further below, the court agrees that Plaintiff failed to exhaust his administrative remedies as to Claim 3; therefore, no further action need be taken with respect to Ivie and Barfield in terms of service.

Defendants move for summary judgment, arguing: (1) the court must dismiss Claims 2 and 3 because Plaintiff did not exhaust his administrative remedies; (2) Plaintiff's retaliation claims are unsupported; (3) Plaintiff's Fourth Amendment claim is unsupported; (4) there is no liability on the part of grievance responders Drummond, Reubart, Filson and Wickham; (5) Mele

was not employed by NDOC at the time of the conduct attributed to him in Plaintiff's FAC; and (6) Defendants are entitled to qualified immunity.

## **II. LEGAL STANDARD**

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion**

    **1. Standard**

       The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

administrative remedies irrespective of the forms of relief sought and offered through

administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

       If a defendant shows the plaintiff did not exhaust available administrative remedies, the

burden shifts to the plaintiff "to come forward with evidence showing that there is something in

his particular case that made the existing and generally available administrative remedies

effectively unavailable to him." *Albino v. Baca,* 747 F.3d 1162, 1172 (citing *Hilao v. Estate of*

*Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th

Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison

staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain

why he failed to comply with the administrative remedies process)). The ultimate burden of

proof, however, remains with the defendant. *Id.*

       NDOC's grievance procedure is set forth in AR 740. (ECF No. 61-6.) To complete the

grievance process, an inmate must timely submit an informal, first and second level grievance.

(*Id.* at 10-15.) It is considered an abuse of the inmate grievance procedure if, among other things,

a grievance contains more than one appropriate issue per grievance, or if the grievance contains more than two continuation forms (DOC 3097) per grievance. (*Id.* at 7.)

**2. Claim 2**

In Claim 2, Plaintiff alleges that on March 11, 2018, Esquivel, Adams, Ornelas, and Herrera retaliated against Plaintiff for filing a verbal complaint to the area sergeant that they were not doing their job of handing out supplies. As a result, Plaintiff claims these Defendants purposely performed a cell search and destroyed Plaintiff's personal property and legal documents. Esquivel, Herrera and Adams placed Plaintiff in the housing unit shower cage while the search was conducted. Plaintiff asserts that Adams worked in the control tower and refused to notify the area sergeant when Plaintiff asked. Plaintiff avers that Esquivel had trashed his cell in the past. In addition, Filson and Wickham were the grievance responders, and Filson continued to assign Esquivel to work in Plaintiff's housing unit.

Plaintiff filed informal level grievance 20063062641 stating that on March 11, 2018, he told the sergeant that the shift officers refused to give out supply forms, and then Esquivel, Herrera and Ornelas purposely retaliated against Plaintiff with an unconstitutional cell search and destroyed his personal property. Plaintiff notified Adams and Herrera, but they refused to do anything. The grievance also contained an allegation about Esquivel making an inappropriate statement to him, which Plaintiff said violated the Prison Rape Elimination Act (PREA). Plaintiff also said that Esquivel had trashed his cell in the past, and Plaintiff had a civil rights lawsuit against him for this and against Filson for not correcting his behavior. (ECF NO. 61-9 at 7- 10; ECF No. 61-3 at 2.) The informal level grievance was returned to Plaintiff with an improper grievance memorandum, stating that grievance continuation forms may not exceed two pages; however, his PREA allegation was forwarded to the Inspector General's Office. The form

instructed Plaintiff to correct the noted deficiency and re-submit the grievance at the same level. (ECF No. 61-9 at 6; ECF No. 61-3 at 2; ECF No. 65 at 63.)

Plaintiff filed a first level grievance stating that he disagreed with the improper grievance response because he maintained that the continuation sheets were properly used to bring his complaint to the attention of the administration, and that Reubart was deterring his access to the courts. (ECF No. 61-9 at 5; ECF No. 65 at 68.) The first level grievance was also returned with a notice stating that Plaintiff did not follow instructions to submit the grievance at the same level and use only 2 continuation forms. (ECF NO. 61-9 at 4; ECF No. 61-3 at 2; ECF No. 65 at 64.)

Plaintiff also disagreed with this improper grievance response, stating that the informal grievance was proper enough to be referred to the Inspector General, so the entire grievance should be proper. (ECF NO. 61-9 at 3; ECF No. 65 at 69.) This was returned to Plaintiff, again stating he did not follow instructions and submit the grievance at the informal level using only two continuation forms. (ECF No. 61-9 at 2; ECF No. 65 at 65.)

In his response to Defendants' motion, Plaintiff acknowledges that his grievance contained more than two continuation forms. Plaintiff argues, however, that the requirement that a grievance not include more than two continuation forms is a "machination" that the prison uses to thwart the inmate grievance process and was considered unconstitutional by the Supreme Court in *Ross v. Blake*, 136 S.Ct. 1850 (2016).

The Supreme Court has held that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

That being said, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

Contrary to Plaintiff's argument, neither the Supreme Court nor the Ninth Circuit has held that administrative remedies become unavailable if a prison restricts an inmate to two grievance continuation forms. In *Ross v. Blake*, the Supreme Court noted three instances where administrative remedies are unavailable: First, administrative remedies are unavailable "when (despite what regulations or guidance materials may promise) [the grievance process] operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (*i.e.*, handbook that directs an inmate to submit grievances to a particular administrative office, but in practice that office disclaims the capacity to consider those petitions). Second, administrative remedies may be unavailable when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." This might occur "[w]hen rules are 'so confusing that … no reasonable prisoner can use them[.]'" Third, administrative remedies are unavailable "when prison administrators thwart inmates from

taking advantage of a grievance process through machination, misrepresentation, or
intimidation." *Ross*, 136 S.Ct. at 1859-60.

Plaintiff characterizes NDOC's requirement that a grievance not include more than two
continuation forms as "machination" without specifically explaining how this made the
grievance process unavailable to him. Instead of re-filing his informal level grievance and
describing his issue in the grievance cover page and two continuation pages and proceeding
through all levels of NDOC's grievance process, Plaintiff kept disagreeing with his initial
grievance being rejected for containing more than two continuation forms. He has not
demonstrated that this practice constitutes "machination" such that the grievance process was
unavailable to him.

Here, to properly exhaust his administrative remedies, Plaintiff was required to comply
with AR 740's rule that his grievance contain no more than two continuation forms. Plaintiff did
not do so, and did not complete his grievance as to Claim 2; therefore, this claim should be
dismissed. Under AR 740, the time has long since passed for Plaintiff to grieve this issue;
therefore, it is appropriate to enter summary judgment as to Claim 2. (ECF No. 61-6 at 11.)

**3. Claim 3**

In Claim 3, Plaintiff alleges that on March 19, 2018, Ivie and Barfield purposely refused
to provide Plaintiff with his Islamic religious food kosher tray in retaliation for filing a grievance
against their subordinate, Esquivel. Instead, they gave Plaintiff a food tray filled with empty
wrappers and bitten off food. Plaintiff was allowed to proceed with a retaliation claim, but not a
First Amendment Free Exercise Clause claim.

Plaintiff filed informal level grievance 20063063464, stating that on March 19, 2018, Ivie
and Barfield refused to provide him with his religious diet food tray and purposely gave him the

wrong one which was missing food contents and filled with empty wrappers. He claimed this was done in retaliation for a grievance filed on their subordinate, Esquivel. He also said that on the same day, Ivie and Barfield refused to provide Plaintiff with brass slips for his outgoing legal mail. (ECF NO. 61-10 at 5-6; ECF No. 65 at 52-53; ECF No. 61-4 at 5.)

The informal level grievance was returned to Plaintiff stating that the grievance contained more than one appropriate issue, and that only one issue is allowed per grievance. (ECF No. 61-10 at 4; ECF No. 61-4 at 4; ECF No. 65 at 54.) Plaintiff filed a first level grievance stating that he disagreed because he was alleging misconduct by the same staff on the same day, which he claimed was not allowed to be asserted in another grievance because a prisoner can only send in one grievance per week. (ECF No. 61-10 at 3; ECF No. 61-4 at 3; ECF Mo. 65 at 55.) That grievance was also returned, advising Plaintiff he did not follow instructions and resubmit the grievance at the informal level. (ECF No. 61-10 at 2; ECF No. 61-4 at 3; ECF No. 65 at 56.) Plaintiff filed a second level grievance, disagreeing with the second rejection of his grievance, stating that he alleged the same actions of the same staff misconduct on the same day. (ECF No. 65 at 57.)

Again, Plaintiff has not demonstrated that the grievance process was unavailable to him as a result of AR 740's requirement that a grievance be limited to one issue. Plaintiff argues that because he could only file one grievance per week, the rejection of his grievance for containing two issues made his administrative remedies unavailable. Plaintiff has not established that this *actually* rendered the grievance process unavailable to him. For example, Plaintiff has not shown that he attempted to re-file his grievance asserting the retaliation claim against Ivie and Barfield about the food tray, and then filed a separate grievance about Ivie and Barfield refusing to provide Plaintiff with brass slips (which would have had to be filed the following week under

AR 740), and that one of those grievances was rejected or that he was otherwise precluded from completing the grievance process as to either issue.

Plaintiff did not properly grieve this claim by following AR 740's directive to include only one issue per grievance, and proceed through all three levels of the grievance process. Therefore, Claim 3 should be dismissed, and because the time to grieve this issue has long since passed, it is appropriate to enter summary judgment as to Claim 3. (ECF No. 61-6 at 11.)

**B. Retaliation**

**1. Standard**

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)). Prisoners have a fundamental First Amendment right to file prison grievances and pursue civil rights litigation. *Rhodes*, 408 F.3d at 567 (citation omitted); *Entler v. Gregoire,* 872 F.3d 1031, 1039 (9th Cir 2017) (quoting *Rhodes*, 408 F.3d at 567).

An inmate must submit evidence, direct or circumstantial, to establish a link between the exercise of constitutional rights and the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and quotation marks omitted). The plaintiff "need only put forth evidence of retaliatory motive, that taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent[.]" *Id*. (quotation marks and citation omitted). Circumstantial evidence may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse … action were false and pretextual." *Id*. (citation and quotation marks omitted). A plaintiff's mere speculation that there is a causal connection is insufficient to raise a genuine issue of material fact. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citations omitted) (affirming grant of summary judgment where there was no evidence that the defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to the prior lawsuit).

"[A] plaintiff does not have to show that his speech was actually inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (citation and quotation marks omitted).

**2. Claim 1**

Plaintiff was allowed to proceed with a retaliation claim against defendants Belt, Filson, Frazier, Mason, Mollett, Montes, Rivera and Wickham based on allegations that on

December 10, 2017, Rivera, Mason, Belt, Frazier, Montes and Mollet retaliated against him when they purposely pulled Plaintiff out of his cell and performed a search of his cell and placed him in the shower cage in full restraints for six hours for filing lawsuits and grievance complaints against the Attorney General and his deputies. Specifically, Plaintiff avers that Rivera and Mason placed him in the shower in handcuffs and then returned to Plaintiff's cell with Belt and Frazier, and destroyed Plaintiff's legal documents, religious books and materials on the advice of supervising officer Montes. Plaintiff claims that Rivera came to the shower cage and told him the cell search was because Plaintiff had filed a lawsuit and grievance against the Attorney General and his deputies. Plaintiff called Mason, Belt and Frazier to the shower cage to stop the search and called Montes to do the same, but they failed to intervene for 3 hours.

Plaintiff claims that Wickham and Filson are the warden and deputy director and both knew of retaliation against Plaintiff by ESP staff for exercising his right to file grievances and lawsuits from his past grievances, and as grievance responders they elected not to correct their subordinates actions.

Plaintiff filed informal level grievance 20063059041, stating that on December 10, 2017, he was retaliated against by Rivera, Mason, Belt, Frazier and Montes for filing lawsuits and grievances against the Attorney General and his deputies. He claimed that they pulled him out of his cell and searched his legal documents and trashed his legal work and religious books. During this time, they placed Plaintiff in the shower with full restraints. He asserted that Rivera told him the search was because he filed lawsuits and a grievance against the Attorney General and his deputies. Montes, Mason, Frazier and Belt failed to intervene. (ECF No. 61-8 at 7-9; ECF No. 65 at 80-81.)

Plaintiff was initially told that the grievance was untimely (ECF No. ECF No. 65), but Plaintiff disputed this in his first level grievance (ECF No. 65 at 78). Filson then responded substantively to the first level grievance, stating that the officers were contacted and said that the cell was searched in accordance with Operational Procedure (OP) 422. During the search, they found a piece of metal was missing from the table in his cell, and maintenance staff had to repair the damage, and staff had to come to ensure the cell was safe for Plaintiff to return. During this time, Plaintiff could not be returned to his cell for safety and security reasons. (ECF No. 61-8 at 4; ECF No. 65 at 77.)

Plaintiff disagreed, maintaining that the search was purposely done for filing lawsuits and grievances. (ECF No. 61-8 at 2; ECF No. 65 at 76.) Wickham responded to the second level grievance, repeating Filson's response. (ECF No. 61-8 at 3; ECF No. 61-7 at 42; ECF No. 65 at 75.)

In connection with Defendants' motion, Wickham provides a declaration stating that on December 10, 2017, Plaintiff was removed from his cell for a cell search in accordance with OP 422 Plaintiff, and during the search it was discovered that a piece of metal was missing from the table in Plaintiff's cell. Maintenance was called to repair the damage, and while they work the inmate is not allowed in the cell. The cell must then be inspected for safety and security reasons. The piece of metal from the table was found in the tier, and the metal could have been used for nefarious purposes and was a safety and security issue. He states that Hendrix's grievance and litigation history had nothing to do with this incident. (Wickham Decl., ECF No. 61-15.)

OP 422 provides staff will conduct random cell searches each day. (ECF No. 61-2 at 4.) The inmate is to be removed from the cell and an unclothed body search is to be conducted. The inmate is to be placed in restraints and secured in the shower or another secure location while the

cell search is conducted. (*Id*. at 5.) After the search is completed, the inmate is to be returned to his cell. (*Id*.) Additional cell searches may be conducted in maximum lockup units. (*Id*. at 6.) Inmates in lockup cells must also submit to an unclothed body search. (*Id*.)

In his response, Plaintiff repeats his allegation that these defendants retaliated against him for filing a lawsuit and grievance against the Attorney General and his deputies by searching Plaintiff's cell and placing him in full restraints in the shower for an extended period of time. (Pl. Decl., ECF No. 65 at 26 ¶¶ 4-8.) He reiterates that Rivera told him the cell search was because he filed lawsuits and grievances complaining against the Nevada Attorney General and his deputies. (Pl. Decl., ECF No. 65 at 27 ¶ 11.)  He asserts that he asked Mason, Belt and Frazier as well as Montes to stop the search, but they failed to intervene for three hours. (Pl. Decl., ECF No. 65 at 27 ¶ 12.)

In response to Defendants' argument that there was a legitimate penological response for the search because they found a piece of metal broken off of Plaintiff's desk, Plaintiff claims that this was an exaggerated response. He points to the level 1 grievance response in grievance 20063059041, which states that it was determined a piece of metal was missing from the table in Plaintiff's cell, and the level 2 response said that while officers were conducting a search, a piece of metal was found that was attached to one of the tables on the tier. Plaintiff also states he was never reported or disciplined for contraband. (Pl. Decl., ECF No. 65 at 27-28 ¶¶ 14-15; ECF No. 65 at 88.) Finally, Plaintiff maintains he never had a piece of metal in his cell that was torn from table on the tier or the desk in his cell. (Pl. Decl., ECF NO. 65 at 27 ¶ 13.)

Plaintiff has raised a genuine dispute of material fact as to whether here was a legitimate penological purpose for the search of his cell. Defendants contend that the search was performed

1 and Plaintiff was kept out of his cell because a piece of metal was found to be missing from a

2 table in his cell, while Plaintiff disputes that this was the case.

3       Nevertheless, a plaintiff asserting a retaliation claim must demonstrate that the adverse

4 action in question was taken *because of* the inmate's protected conduct. Here, the only evidence

5 Plaintiff has produced to show a connection between his lawsuit and grievances and this search

6 is a statement he attributes to Rivera that the search was done because Plaintiff had filed a

7 lawsuit and grievances against the Attorney General and his deputies. This may be sufficient to

8 defeat summary judgment as to Rivera, but Plaintiff puts forth no evidence of a causal

9 connection with respect to the remaining Defendants. In other words, he provides no evidence

10 that the other Defendants involved knew about any lawsuit or grievance against the Attorney

11 General and his deputies, or otherwise connects their conduct during the search to his protected

12 activity. There is no evidence that they even knew of the lawsuit or grievances in question.

13       Finally, Plaintiff names Filson and Wickham, but their only involvement was in

14 responding to Plaintiff's grievance by repeating what the involved officers reported regarding the

15 incident. There is no evidence that Filson or Wickham had any involvement in the search, or that

16 they denied Plaintiff's grievance *because of* Plaintiff's protected conduct.

17       Therefore, summary judgment should be granted in Defendants' favor except as to Rivera

18 for the retaliation claim in Claim 1.

19      **3. Claim 4**

20       Plaintiff alleges that on July 26, 2019, he was escorted to the facility's holding cell for a

21 telephonic conference call with a Deputy Attorney General when Baltierra, Mele and McArdle

22 retaliated against him because he had filed a state civil rights lawsuit. He claims that Baltierra

23 had escorting officers place Plaintiff in a small visiting booth in total darkness, and refused to

turn the lights off so that Plaintiff could take notes and review court documents. Plaintiff was in the cell from 12:30 p.m. until 5:00 p.m., and Mele allowed this wrongdoing to continue. Plaintiff contends that they also denied him water and restroom breaks. He claims that Baltierra told Plaintiff he should not have filed the lawsuit, and that she was going to make his life at ESP hell. Plaintiff avers that Drummond and Reubart were told about the wrongdoing of McArdle and Baltierra in past grievances and request forms before this incident, but took no corrective action to curtail the abusive treatment. Drummond and Reubart were the grievance responders and denied a remedy to end the wrongdoing.

Plaintiff filed informal level grievance 20063087784 asserting these allegations on August 6, 2019. (ECF No. 61-5 at 7-9.)

Drummond responded to the informal level grievance, stating that a video review revealed that when the telephonic conference was completed and staff were aware, they notified shift command and Plaintiff was returned to his cell at the earliest time the shift could do so. In addition, Drummond stated that the lights were never turned off. (ECF No. 61-5 at 6.)

Plaintiff filed a first level grievance, disagreeing with the informal level response, and claiming that the video would show a prisoner being taken back to his housing unit by McArdle at or before 3:00 p.m. (ECF No. 61-5 at 5.)

W. Gittere responded to the first level grievance that repeated Drummond's response. (ECF No. 61-5 at 4.)

In his second level grievance, Plaintiff maintained that he was in a booth with no lights. (ECF No. 61-5 at 2.) Wickham responded to the second level grievance, reiterating Drummond's response. (ECF No. 61-5 at 3.)

Defendants provide the declaration of Drummond who states that he personally reviewed the video of the area where Plaintiff was taken to receive the call, and the lights were not turned off in the holding area where Plaintiff took the call. In addition, staff escorted Plaintiff back to his cell once they became aware he had completed his telephonic conference as staff rely on the inmate to advise when the conference is concluded. (Drummond Decl., ECF No. 61-12.)

Baltierra states in her declaration that on July 26, 2019, she was the main control officer for the holding cell D area, which is designated for telephonic conference calls. Anytime an inmate enters the holding cell, she always turns on the light for safety and security reasons. On this occasion, the lights were not turned off. In addition, she reiterates that staff escorted Plaintiff back to his cell once they became aware he had completed his conference call. Baltierra also states that she allowed McArdle to enter the holding cell on several occasions to offer restroom and water breaks. After her shift ended, she advised Plaintiff that the next shift would return him to his cell, and he became verbally abusive. She states she was unaware of any of Plaintiff's lawsuits. (ECF No. 61-14.)

In his declaration, James Mele states that he was not employed by NDOC until August of 2019. (Mele Decl., ECF No. 61-13.)

In his response, Plaintiff repeats his allegations that Baltierra and McArdle retaliated against him for his  civil rights lawsuit being served on McArdle and Baltierra when Baltierra had the escorting officers place Plaintiff in a small visiting booth in the dark and refused to turn on the lights so Plaintiff could take notes and review documents for five hours. He claims he was left in the visiting booth by Baltierra and McArdle after his legal call ended without water or bathroom breaks. He repeats his contention that Baltierra told Plaintiff he should not have filed the lawsuit, and that she was going to make his life hell at ESP. Plaintiff maintains that McArdle

took other inmates back to their housing unit while Plaintiff was left in the visiting booth. (Pl.

Decl., ECF No. 65 at 39 ¶¶ 4-8, 40 ¶¶ 9-10.) Plaintiff provides a notice filed

September 12, 2018, in the Seventh Judicial District Court regarding served and unserved

defendants indicating that Reubart, Baltierra, and McArdle were served at ESP on

August 30, 2019. (ECF No. 65 at 43-44.)

Plaintiff provides no evidence to refute that Mele was not working at NDOC during the

time in question; therefore, summary judgment should be granted in Mele's favor.

There is a dispute as to whether Plaintiff was left in the holding cell with the lights off,

and whether he was left in the holding cell for an extraordinary amount of time after he finished

his teleconference.

Insofar as McArdle is concerned, Plaintiff's only evidence of a connection between

McArdle and Plaintiff's protected activity is that McArdle was served with a lawsuit; however,

Plaintiff's evidence reflects that McArdle was served with the lawsuit on *August 30, 2019*, and

the conduct in question occurred on *July 26, 2019*, before McArdle was supposedly served with

the lawsuit. To prove a retaliation claim, an inmate must demonstrate that the defendant's

adverse action was done *because of* the protected activity. Even assuming that McArdle did take

other inmates back to their cells while Plaintiff was left in the holding booth, there is no evidence

that this was done because of Plaintiff's protected activity, i.e., his state court lawsuit, as Plaintiff

provides no other evidence that McArdle was even aware of the lawsuit at the time. Therefore,

summary judgment should be granted in favor of McArdle.

By way of contrast, Plaintiff does state in his declaration that Baltierra told him that he

should not have filed the lawsuit. While it is unclear how Baltierra would have known about the

lawsuit before being served with it, the statement Plaintiff attributes to Baltierra creates a

genuine dispute of material fact as to whether Baltierra's conduct was motivated by Plaintiff's lawsuit (if a fact finder determines Baltierra did turn off the lights and leave Plaintiff in the holding cell for an unreasonable amount of time). Therefore, summary judgment should be denied as to Baltierra.

Plaintiff further asserts that he told Reubart and Drummond of McArdle and Baltierra's wrongdoing in the past via grievances and inmate request forms and how he was being purposely left in visiting holding booths, but no protective measures were taken. (Pl. Decl., ECF No. 65 at 40 ¶ 12.) Plaintiff does not provide the grievances he supposedly sent to Reubart and Drummond. Nor does he state when they were sent, what exactly was said, and how Reubart or Drummond responded. In any event, this retaliation claim is about leaving Plaintiff in a dark cell for an unreasonable amount of time without water or restroom breaks on July 26, 2019, because Plaintiff filed a state court lawsuit. Reubart and Drummond responded to Plaintiff's grievance on this issue. There is no evidence that they had anything to do with the alleged retaliatory action, *i.e*, that they were involved in keeping him in the dark during his teleconference for hours or denying him water or restroom breaks. Therefore, summary judgment should be granted in favor of Reubart and Drummond.

### 4. Qualified Immunity

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017); *see also Hines v. Youseff*, 914 F.3d 1218, 1228-29 (9th Cir. 2019).

Viewing the facts in the light most favorable to plaintiff, a fact finder could determine that Rivera and Baltierra retaliated against Plaintiff. In addition, it was clearly established that there is a constitutional right to pursue grievances or civil litigation absent retaliatory conduct. *See Entler v. Gregoire*, 872 F.3d 1031, 1041-42 (9th Cir. 2017).

**C. Fourth Amendment**

Plaintiff alleges that Mollett and Beedle ordered Plaintiff to strip out in the housing unit shower cage for a body cavity search to search for contraband to harass, humiliate, intimidate and embarrass Plaintiff.

An inmate retains the right to be free from "unreasonable searches and seizures." U.S. Const., amend IV. "[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). Prisoners retain limited Fourth Amendment rights to shield themselves from being observed nude, and generally, strip searches and routine visual body cavity searches do not violate the Fourth Amendment rights of prisoners. *See Bell*, 441 U.S. at 558; *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997); *Michenfelder v. Sumner,* 860 F.3d 328, 332 (9th Cir. 1988). The reasonableness of a particular search is examined in reference to the prison context. *Michenfelder,* 860 F.2d at 332. The Ninth Circuit has held, however, that strip searches that are excessive, vindictive, harassing or unrelated to any penological purpose are not reasonable. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988).

Defendants provide evidence that the search of Plaintiff's cell and accompanying unclothed body search was done in accordance with OP 422.

In his response, Plaintiff states that Mollett and Beedle ordered him to strip out in the housing unit shower cage for a body cavity search that had him standing in bodily fluids of other prisoners who had showered. (Pl. Decl., ECF No. 65 at 27 ¶ 9.)

Plaintiff merely repeats the allegations of the FAC without providing any factual details or evidence to support his claim that Mollett or Beedle's search was intended to harass, humiliate, intimidate and embarrass him. Therefore, summary judgment should be granted in favor of Beedle and Mollett as to the Fourth Amendment claim.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 61) **EXCEPT** as to the retaliation claim against Rivera in Claim 1 and the retaliation claim against Baltierra in Claim 4.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 26, 2021

_William G. Cobb_
William G. Cobb
United States Magistrate Judge

22